A-351-842
Remand
Slip Op. 23-56
POR:  03/01/2018 – 02/28/2019
**Public Document**
E&C/OV:  SP

*Suzano S.A. v. United States*
**Court No. 21-00069, Slip Op. 23-56 (CIT April 20, 2023)**
**Certain Uncoated Paper from Brazil**

**FINAL RESULTS OF REDETERMINATION**
**PURSUANT TO COURT REMAND**

## I.      SUMMARY

The U.S. Department of Commerce (Commerce) has prepared these final results of

redetermination in accordance with the opinion and remand order of the U.S. Court of

International Trade (the Court) in *Suzano S.A. v. United States*, Court No. 21-00069, Slip Op. 23-

56 (CIT April 20, 2023) (*Remand Order II*).  These final results of redetermination concern the

*Final Results* in the third administrative review of the antidumping duty (AD) order on certain

uncoated paper (uncoated paper) from Brazil[1] covering the period of review (POR) March 1,

2018, through February 28, 2019.[2]

The Court remanded to Commerce for further explanation and consideration its decision

not to modify the cost of production (COP) calculations for Suzano Papel e Celulose S.A. (now

known as Suzano S.A.)[3] (Suzano) to exclude certain derivative expenses from the financial

expense ratio.  Consistent with the *Remand Order II*, Commerce has modified its COP

---

[1] *See Certain Uncoated Paper from Australia, Brazil, Indonesia, the People's Republic of China, and Portugal: Amended Final Affirmative Antidumping Determinations for Brazil and Indonesia and Antidumping Duty Orders*, 81 FR 11174 (March 3, 2016) (*Order*).
[2] *See Certain Uncoated Paper from Brazil:  Final Results of Antidumping Duty Administrative Review; 2018–2019*, 86 FR 7254 (January 27, 2021) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).
[3] *See Certain Uncoated Paper from Brazil:  Final Results of Antidumping Duty Administrative Review; 2019–2020*, 86 FR 55820 (October 7, 2021).

calculations and provided further explanation of its decision and analysis of the administrative record regarding this issue, as discussed below.

## II.    BACKGROUND

### A.  Commerce's *Final Results*

On May 29, 2019, Commerce initiated the third administrative review of the *Order*[4] with respect to the following companies:  International Paper do Brasil Ltda. and its affiliate International Paper Exportadora Ltda. (collectively, International Paper); and Suzano.  On July 19, 2019, we issued AD questionnaires to International Paper and Suzano.[5]

In January 2019, shortly before the end of the POR, Suzano acquired a 100 percent ownership stake in Fibria Celulose S.A. (Fibria), a producer of eucalyptus pulp,[6] and it reported that the "merger" was finalized and approved by the shareholders in April 2019.[7]  In the months leading up to the acquisition, Suzano not only secured loans and credit facilities, but it also acquired numerous derivatives to protect against adverse exchange rate fluctuations.[8]

On August 21, 2019, Suzano submitted to Commerce a calculation of its financial expense ratio based on consolidated 2018 financial statements for both Suzano and Fibria.[9]  The calculation included Suzano's derivative losses in the numerator of the financial expense ratio and combined the cost of sales of both companies in the denominator.[10]

On February 26, 2020, at Commerce's request, Suzano submitted the calculation of its financial expense ratio based exclusively on Suzano's audited 2018 consolidated financial

---

[4] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 84 FR 24743 (May 29, 2019).
[5] *See* Commerce's Letters, "Request for Information," dated July 1, 2019.
[6] *See* Suzano's Letters, "Suzano's Response to Questionnaire for Section A," dated July 26, 2019 (Suzano's Initial Section A Questionnaire Response), at n.1; and "Suzano's Response to Questionnaire for Section D," dated August 21, 2019 (Suzano's Initial Section D Questionnaire Response), at Exhibit D-19a.
[7] *See* Suzano's Initial Section A Questionnaire Response at Exhibit A-27.
[8] *See* Suzano's Initial Section D Questionnaire Response at D-31, D-38 to D-39, and Exhibits D-19 to D-19a.
[9] *Id*. at D-30 to D-31.
[10] *Id*. at Exhibit D-19.

statements that included all of Suzano's derivative losses.[11]  Suzano submitted a second

calculation of its financial expense ratio based exclusively on Suzano's audited 2018

consolidated financial statements; this calculation excluded the derivative losses associated with

the Fibria acquisition.[12]  Suzano argued that, because its unaudited quarterly reports associate the

company's derivative losses with the Fibria acquisition (thus, excluding those losses from

normal operations),[13] Commerce should adopt the second of the two methods in its COP

calculations.[14]

On April 2, 2020, Commerce published the *Preliminary Results*,[15] in which we relied on

the first of Suzano's submitted financial expense ratio calculations from its revised February 26,

2020, response (and, therefore, we included expenses related to the acquisition of Fibria in the

ratio calculations).  On May 28, 2020, Suzano submitted a case brief requesting that Commerce

adjust its calculation of Suzano's financial expense ratio to exclude the net derivative losses

related to its acquisition of Fibria on the grounds that the expenses tied to the acquisition were

"extraordinary" and not related to Suzano's normal operations or cash management.[16]

On January 27, 2021, Commerce published the *Final Results*,[17] in which we again

declined to use Suzano's proposed expense ratio that excluded the derivative losses associated

with the Fibria acquisition.[18]  As support for our decision, we explained:

---

[11] *See* Suzano's Letter, "Suzano's Supplemental Section D Questionnaire Response," dated February 26, 2020 (Suzano's Supplemental Section D Questionnaire Response), at Exhibit SD-2; *see also* Commerce's Letter, "Supplemental Questionnaire for Section D," dated February 14, 2020, at 3.
[12] *See* Suzano's Supplemental Section D Questionnaire Response at Exhibit SD-2.
[13] *Id.*
[14] *Id.* at 3-4.
[15] *See Certain Uncoated Paper from Brazil:  Preliminary Results of the Administrative Review of the Antidumping Duty Order; 2018-2019*, 85 FR 18550 (April 2, 2020) (*Preliminary Results*), and accompanying Preliminary Decision Memorandum.
[16] *See* Suzano's Letter, "Suzano's Case Brief," dated May 28, 2020, at 1-3.
[17] *See Final Results*, 86 FR at 7254.
[18] *See Final Results* IDM at 4-5.

While it is Commerce's practice to exclude only investment-related gains or losses from the calculation of cost of production, the capital management mechanisms practiced by Suzano by way of these derivative transactions are reasonably associated with the company's cost of borrowing … .  Moreover, we disagree with Suzano's claim that these derivative expenses are extraordinary and stem from an isolated event … .  Here, the auditors who issued an unqualified opinion on Suzano's financial statements did not classify the derivative expenses as extraordinary.[19]

### B. *Remand Order I*

In *Remand Order I*, the Court held that Commerce's determination that Suzano's derivative expenses related to its acquisition of Fibria were:  (1) not investment-related; and (2) not extraordinary, was not supported by substantial evidence.[20]  Accordingly, the Court remanded the *Final Results* to Commerce for further explanation, and, if appropriate, reconsideration of the agency's cost analysis pursuant to section 773(f)(1)(A) of the Tariff Act of 1930, as amended (the Act).[21]  On remand, Commerce provided additional explanation regarding its decision not to modify Suzano's COP to exclude the derivative expenses from the financial expense ratio.[22]  In short, we made no changes to the *Final Results*.

### C. *Remand Order II*

In the *Remand Order II*, the Court held that Commerce's determination that Suzano's derivative losses were not investment-related costs was supported by substantial evidence and was in accordance with law and the Court's remand instructions.[23]  The Court, however, held that Commerce's determination that Suzano's derivative losses were not extraordinary expenses was unsupported by substantial evidence.[24]  Accordingly, the Court remanded to Commerce for

---

[19] *Id.* at 5.
[20] *See Suzano S.A. v. United States,* 589 F. Supp. 3d 1225, 1233 (CIT 2022) (*Remand Order I*).
[21] *Id.*, 589 F. Supp. 3d at 1237.
[22] *See Final Results of Redetermination Pursuant to Court Remand, Suzano S.A. v. United States*, Court No. 21-00069, Slip Op. 22-95 (CIT August 16, 2022), dated November 14, 2022 (*Final Remand I*), at 25, available at https://access.trade.gov/resources/remands/22-95.pdf.
[23] *See Remand Order II* at 6-8.
[24] *Id.* at 8-16.

4

further explanation, and if appropriate, reconsideration, the determination that Suzano's derivative expenses were not extraordinary for purposes of the COP calculation.[25]

### D. *Draft Results of Redetermination*

Commerce released its Draft Second Remand Results on June 22, 2023,[26] in which we continued to find it reasonable to include the derivative losses in Suzano's COP. However, given the facts at issue, we determined that it was appropriate to recalculate Suzano's financial expense ratio to include Fibria's financial expenses in the numerator, and Fibria's cost of sales in the denominator. As a result of this change, we computed a revised weighted-average final dumping margin for Suzano of 8.63 percent.[27]

Domtar Corporation (the petitioner) and Suzano submitted timely comments on the Draft Second Remand Results on June 27, 2023.[28]

## III.   ANALYSIS

On remand, we continue to find it reasonable to include the derivative losses in Suzano's financial expense rate. Our discussion below, regarding Suzano's derivative losses, explains how the derivative losses relate to the operations of the company and COP[29] and why Suzano's derivative losses should be considered a routine expansion of the company's operations, and not extraordinary.

In the *Final Remand I*, Commerce explained that it did not consider the derivative losses to be extraordinary because the purchase of Fibria was an expansion of Suzano's business

---

[25] *Id.* at 16.

[26] *See* Draft Results of Redetermination Pursuant to Court Remand, *Suzano S.A. v. United States*, Court No. 21-00069, Slip Op. 23-56 (CIT April 20, 2022), dated June 22, 2023 (Draft Second Remand Results).

[27] *See* Memorandum, "Calculation Memorandum for the Draft Results of Redetermination," dated June 22, 2023.

[28] *See* Petitioner's Letter, "Comments on Draft Results of Redetermination," dated June 27, 2023 (Petitioner's Comments); *see also* Suzano's Letter, "Suzano's Comments on Commerce's June 22, 2022, Draft Results Redetermination," dated June 27, 2023 (Suzano's Comments).

[29] *See Remand Order II* at 11 ("Thus, the key question Commerce should address is whether the costs {stemming from the acquisition} relate to the operations of the company.").

operations, rather than an extraordinary event, and that Commerce's practice supported the inclusion of those expenses in the calculation of COP.[30]  Upon further consideration on remand, Commerce continues to find it reasonable to include the derivative losses in Suzano's COP. However, in response to the Court's directive that we support our conclusion by "such relevant evidence as a reasonable mind might accept as adequate,"[31] we have, given the facts at issue, revised Suzano's financial expense rate to also include Fibria's financial expenses and cost of sales.

Section 773(f)(1)(A) of the Act requires Commerce to rely on the books and records of the respondent, provided that those records are compliant with the respondent's home country generally accepted accounting principles (GAAP) and reasonably reflect the COP.  Here, Suzano's audited financial statements (*i.e.*, its normal books and records) are compliant with the GAAP of Brazil, and Suzano's financial statements show that the derivative losses were classified as financial expenses rather than extraordinary expenses.[32]  As explained by the Court, Commerce is allowed to prefer substance over form, and need not blindly accept a financial statement's treatment of costs.[33]  On remand, consistent with the Court's instructions, we provide further explanation of our finding that the derivative losses relate to Suzano's normal operations and reasonably reflect the COP.

Because money is fungible, Commerce's consistent practice in calculating financial expenses is to examine the nature of the financial assets and liabilities that generated financial expenses, rather than the association of specific financial expenses with particular uses of the

---

[30] *See Final Remand I* at 23-24.
[31] *See Remand Order II* at 8 (quoting *Universal Camera Corp v. NLRB*, 340 U.S. 474, 477 (1951)).
[32] *See* Suzano's Initial Section A Questionnaire Response at Exhibit A-17 ("Auditor's Report" and "Statements of Income," respectively).  The "Statements of Income" refer to accompanying footnote 26 that explicitly shows that the derivative losses are included in financial expenses.
[33] *See Floral Trade Council of Davis, Cal. v. United States*, 16 CIT 1014, 1016 (1992) (*Floral Trade Council*).

funds or activities.[34]  Here, the assets and liabilities that generated the financial expenses were

Suzano's derivatives (*i.e.*, hedging instruments), not the specific financing instruments used for

the Fibria acquisition.[35]  Where financial expenses are related to investment assets or investment

liabilities (including investment derivatives), Commerce's practice is to exclude the associated

financial expenses because they do not relate to normal operations or production.[36]  Here, the

Court upheld Commerce's determination that the derivatives in question were not associated

with investments.[37]  The record shows that Suzano uses derivatives in its normal operations

exclusively for hedging purposes.[38]  Indeed, Suzano's use of derivatives is not unique to the debt

related to the Fibria acquisition; record evidence indicates that Suzano engaged in such practices

for other purposes.[39]  Further, as discussed below, the acquisition of Fibria was not a unique or

abnormal procedure for Suzano.

---

[34] *See, e.g.*, *Certain Steel Concrete Reinforcing Bars from Turkey; Final Results of Antidumping Duty Administrative Review and Determination to Revoke in Part*, 73 FR 66218 (November 7, 2008), and accompanying IDM at Comment 3 (citing *Final Results of Antidumping Duty Administrative Review, Stainless Steel Wire Rod from Taiwan*, 66 FR 52587 (October 16, 2001), and accompanying IDM at Comment 2 (where Commerce noted that "money is fungible, and a corporation can use the proceeds from loans for a variety of corporate purposes, we do not generally investigate the use of the loan proceeds, and therefore do not associate interest expense with specific activities")); *see also Notice of Final Results of Antidumping Duty Administrative Review and Notice of Final Results of Antidumping Duty Changed Circumstances Review:  Certain Softwood Lumber Products from Canada*, 69 FR 75921 (December 20, 2004), and accompanying IDM at Comment 10 (where Commerce stated that because money is fungible, financing costs need not be allocated with respect to the specific purposes for which funds are used); and *Notice of Final Determination of Sales at Less Than Fair Value:  Structural Steel Beams from Taiwan*, 67 FR 35484 (May 20, 2002), and accompanying IDM at Comment 5 (noting that because money is fungible, Commerce cannot, and does not, distinguish between funds borrowed to finance ordinary production operations and funds borrowed to cover other types of losses or expenses).
[35] Suzano's derivatives are shown in its financial statements as assets and liabilities.  *See* Suzano's Initial Section A Questionnaire Response at Exhibit A-17 ("Balance Sheets").
[36] *See, e.g.*, *Certain Tapered Roller Bearings from the Republic of Korea:  Final Determination of Sales at Less Than Fair Value*, 83 FR 29092 (June 22, 2018) (*TRBs from Korea*), and accompanying IDM at Comment 7.
[37] *See Remand Order II* at 9.
[38] *See* Suzano's Initial Section D Questionnaire Response at Exhibit D-19a ("2Q18 Earnings Release," "DERIVATIVE TRANSACTIONS").
[39] *Id.* ("1Q18 Earnings Release" (showing that derivatives were used in the normal course of business prior to the commitment for financing vehicles related to the Fibria acquisition) and "2Q18 Earnings Release" (second page) (showing that derivatives were used in the normal course of business for other purposes in addition to the financing related to the Fibria acquisition)).

While we concede that Commerce has not previously addressed derivative losses incurred for the specific purpose seen here, Commerce's consistent practice is to include gains and losses for derivative transactions not related to investments in the calculation of a respondent's financial expenses without considering the specific asset or liability for which the monies are used.[40]

As discussed below, Suzano's practice of acquiring companies to expand its business operations is not an extraordinary event.[41]  Commerce's definition of an extraordinary event is based on U.S. GAAP; to be classified as extraordinary, an event must be unusual in nature and infrequent in occurrence.[42]  As the Court has elaborated, an event is unusual in nature if it possesses a high degree of abnormality and is of a type clearly unrelated to, or only incidentally related to, the ordinary and typical activities of the enterprise.[43]

Commerce does not consider the buying or selling of businesses to be part of a respondent's normal production operations.[44]  Further, Commerce's normal practice regarding derivatives focuses on the derivatives themselves rather than how the resulting funds are used.  Thus, on remand, we explain why Suzano's derivatives losses are not extraordinary.[45]

Suzano argued that the Fibria acquisition has the nature of "a unique, once-in-a-corporate lifetime event where Suzano acquired a larger company with a different scope and nature of

---

[40] *See, e.g., Heavy Walled Rectangular Welded Carbon Steel Pipes and Tubes from the Republic of Korea:  Final Results of Antidumping Duty Administrative Review; 2018-2019*, 86 FR 35060 (July 1, 2021) (*HWRPT from Korea*), and accompanying IDM at Comment 13; *Polyethylene Terephthalate Resin from the Republic of Korea:  Affirmative Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 83 FR 48283 (September 2018) (*PET Resin from Korea*), and accompanying IDM at Comment 3; and *TRBs from Korea* IDM at Comment 7.
[41] *See* Suzano's Initial Section A Questionnaire Response at Exhibit A-17 (p. 30 of 110, n. 1.1.b.ii).
[42] *See Floral Trade Council*, 16 CIT at 1016.
[43] *See Hornos Electricos de Venezuela S.A. v. United States*, 285 F. Supp. 2d 1353, 1364-66 (CIT 2003) (*Hornos Electricos*).
[44] *See, e.g., Notice of Final Results of Antidumping Duty Administrative Review:  Certain Softwood Lumber Products from Canada*, 70 FR 73437 (December 12, 2005) (*Softwood Lumber from Canada*), and accompanying IDM at Comment 8.
[45] *Id.*

operations."[46]  While Suzano may not have previously merged with a company, the acquisition

of a company to expand its operations is not unique.  Suzano stated in its section A questionnaire

response that it produces and sells tissue paper as part of its normal operations.[47]  Suzano's

consolidated financial statements show that the company acquired Fábrica de Papel da Amazônia

(Papel Amazônia), a tissue producer, in 2018, to expand its tissue operations.[48]  The record

further reflects that Suzano acquired PCH Mucuri, the owner of a small hydroelectric plant, in

2018.[49]  Suzano stated in its section D questionnaire response that it uses electricity in the

production of uncoated paper.[50]  These examples, which were captured in the same POR as the

losses in question from the Fibria acquisition, show that expanding normal operations through

acquisitions was not unique or abnormal (Suzano also purchased the companies Papel Amazônia

and PCH Mucuri) nor infrequent (Suzano acquired these companies the year prior to the

acquisition of Fibria).  None of these acquisitions, including Fibria, "chang{ed} the organization

and structure of the company and its operations."[51]  We also disagree with Suzano's claim that

Fibria's scope and nature of operations differs from Suzano's.  Here, contrary to Suzano's

assertions, Fibria produces and sells pulp, as does Suzano.[52]  While the size of the companies

acquired by Suzano, and Suzano's financing of these acquisitions, may differ, the record

evidence supports Commerce's conclusion that Suzano's expansion of its operations through the

---

[46] *See Remand Order II* at 15.
[47] *See* Suzano's Initial Section A Questionnaire Response at A-1.
[48] *Id.* at Exhibit A-17 (p. 30 of 110, n. 1.1.b.ii).
[49] *Id.* at n. 1.1.b.iii.
[50] *See* Suzano's Initial Section D Questionnaire Response at D-6.
[51] *See Remand Opinion II* at 15 (quoting *Softwood Lumber from Canada* IDM at 95 (n. 141)); *see also* Suzano's Initial Section A Questionnaire Response at A-1 (n. 1) (describing how, after the Fibria acquisition, Suzano changed its name to Suzano S.A., but "in all other aspects, corporate policy and operations have remained unchanged").
[52] *See* Suzano's Initial Section D Questionnaire Response at D-31; and Suzano's Initial Section A Questionnaire Response at Exhibit A-17 (p. 26 of 110, n. 1).

acquisition of other companies was not unusual, infrequent, highly abnormal, or incidentally-related to Suzano's operations.

Nonetheless, we agree with the Court that, *given the facts at issue*, a reasonable mind may not conclude that the significant derivative losses are reflective of only Suzano's costs but, rather, that these costs are associated with Suzano's expanded operations, including Fibria's operations. To acquire Fibria, Suzano took on a significant amount of debt for the purposes of expanding its operations. Suzano's management of the cash that resulted from that acquired debt resulted in the hedging losses at issue in this case. Due to the timing of the acquisition, Fibria's cost of sales (which should have been burdened with the hedging loss along with Suzano's cost of sales as part of its expanded operations) was not included in the denominator of Suzano's financial expenses. Accordingly, *for the purposes of this case*, we have revised the calculation of Suzano's financial expenses to reflect the combination of Suzano and Fibria's financial expenses and cost of sales as reported by Suzano.[53] Our decision in this regard not only adheres to Commerce's long-standing principle that money is fungible, but also Commerce's practice of including derivative gains and losses in a respondent's financial expenses while maintaining the reasonableness of the allocation of the expenses in question.

As the Court explained, *Chlorinated Isocyanurates from Spain* and *Pasta from Italy* are inapplicable here,[54] because the instant case concerns derivative losses, and not restructuring costs. For similar reasons, we agree that *PTFE Resin from India* is inapplicable; the

---

[53] *See* Suzano's Initial Section D Questionnaire Response at Exhibit D-19.
[54] *See Remand Order II* at 10-13; *see also Final Results of Antidumping Duty Administrative Review of Chlorinated Isocyanurates from Spain*, 74 FR 50774 (October 1, 2009) (*Chlorinated Isocyanurates from Spain*), and accompanying IDM at Comment 1; and *Notice of Final Results of the Eighth Administrative Review of the Antidumping Duty Order on Certain Pasta from Italy and Determination to Revoke in Part*, 70 FR 71464 (November 29, 2005) (*Pasta from Italy*), and accompanying IDM at Comment 11.

restructuring expenses in that case differ from the losses incurred on derivatives, as in this case.[55]

Indeed, restructuring expenses relate to the streamlining of existing operations,[56] while

derivatives are financial instruments used by companies for cash management to hedge their

exposure to interest rates and foreign currency exposure.[57]   Additionally, unlike restructuring

expenses, which are period expenses related to the streamlining of operations, derivatives are

assets or liabilities used by companies to hedge their cash exposure.

In *Softwood Lumber from Canada*, Commerce found that not all income and expense

items related to an event such as the sale of a production facility should necessarily be included

in COP.[58]   There, Commerce explained that it does not include gains or losses from the sale of a

production facility in COP because such a sale does not support a company's general

operations.[59]   In contrast, the derivatives at issue here are assets and liabilities, and the losses on

those derivatives have been consistently included by Commerce in a respondent's financial

expenses because they relate to the overall operation of the company.[60]

## IV.   INTERESTED PARTY COMMENTS

As noted above, Commerce released the Draft Second Remand Results on June 22,

2023.[61]   The petitioner and Suzano submitted comments on June 27, 2023.[62]   The arguments of

both parties are addressed below.

---

[55] *See Remand Order II* at 12; *see also Granular Polytetrafluoroethylene Resin from India:  Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 87 FR 3722 (January 25, 2022) (*PTFE Resin from India*), and accompanying IDM at Comment 5.
[56] *See, e.g.*, *Chlorinated Isocyanurates from Spain* IDM at Comment 1.
[57] *See, e.g.*, Suzano's Initial Section D Questionnaire Response at Exhibit D-19a.
[58] *See Remand Order II* at 11-12; *see also Softwood Lumber from Canada* IDM at Comment 8.
[59] *Id.*
[60] *See, e.g.*, *HWRPT from Korea* IDM at Comment 13; *PET Resin from Korea* IDM at Comment 3; and *TRBs from Korea* IDM at Comment 7.
[61] *See* Draft Second Remand Results.
[62] *See* Petitioner's Comments; *see also* Suzano's Comments.

*Suzano's Comments*[63]

- The derivative losses demonstrated to be tied to the Fibria acquisition should be excluded in their entirety from Suzano's financial expense ratio.

- The derivative losses at issue cannot reasonably be considered as part of Suzano's overall cash management operations. The losses are investment-related and as such, in accordance with law and Commerce's practice, they must be excluded from the financial expense ratio on these grounds.

- In its Draft Second Remand Results, Commerce concedes that it does not consider the buying or selling of businesses to be part of a respondent's normal operations, but then contrarily states that the acquisition of a company to expand its operations is not unique and cites other instances in which Suzano had made acquisitions of smaller companies to support this conclusion. Commerce also claims that its normal practice regarding derivatives focuses on the derivatives themselves rather than how the resulting funds are used. These arguments are neither supported by record evidence nor reasonable.

- Whether the other smaller company acquisitions cited by Commerce were ordinary acquisitions has not been considered or litigated, and, therefore, Commerce cannot simply presume that these acquisitions were part of Suzano's ordinary operations without further discussion and explanation.

- The acquisitions cited by Commerce are nowhere near as extraordinary in size, nature, and impact on Suzano's operations as its enormously impactful acquisition of Fibria. Moreover, the financial expenses associated with these smaller transactions were not separately broken out and tracked in Suzano's quarterly earnings reports, unlike the

---

[63] *See* Suzano's Comments.

derivative expenses associated with the Fibria acquisition.  Such treatment is likewise indicative of the fundamental qualitative differences between those small acquisitions and the massive Fibria acquisition.

- The Court logically, and properly, held in its *Remand Order I*, and reiterated in its *Remand Order II*, that the size of the acquisition must be considered as a relevant factor when evaluating whether certain expenses are extraordinary and cannot be disregarded here.

- The acquisition of Fibria was a singular activity of enormous magnitude and significance that completely altered the size, scope, and nature of the combined entity's operations.

- Commerce's practice is to exclude extraordinary expenses from its calculation.[64]

- Suzano's use of derivatives for hedging purpose may not be unique solely to the Fibria acquisition, but record evidence demonstrates that the expenses themselves, directly tied to the Fibria acquisition, were uniquely large and uniquely used for a single extraordinary purpose (*i.e.*, the enormous acquisition of a much larger company).

- The purpose or use to which the derivates were applied is not relevant to evaluating whether the expenses are extraordinary.  The reason for obtaining the derivatives and the documented (and uncontroverted) use to which the derivatives were actually applied are decisive as to whether it is reasonable to attribute those losses to the ordinary operations

---

[64] *Id.* at 8 (citing *Carbon and Alloy Steel Wire Rod from Spain:  Final Determination of Sales at Less Than Fair Value, and Final Determination of Critical Circumstances*, in Part, 83 FR 13233 (March 28, 2018) (*Steel Wire Rod from Spain*), and accompanying IDM at Comment 2 (citing *Floral Trade Council*, 16 CIT at 1016  ("Commerce will exclude expenses deemed 'extraordinary' if they pertain to an event which is 'unusual in nature and infrequent in occurrence.")).

of the company.  That is why Commerce has an established related practice of excluding investment related expenses from its calculations.[65]

- Commerce's policy to ignore the purpose and use of the derivatives fails the Court's requirement to employ a method that reasonably reflects and accurately captures all of the actual costs incurred in producing and selling the product under examination.

- If, and to the extent that, Commerce's findings that the derivative losses are not extraordinary are determined by the Court to be consistent with the record and applicable law, Commerce must properly allocate the expenses over the combined financial results of the two companies as it proposed in the Draft Second Remand Results.

- Commerce correctly found in the Draft Second Remand Results that a reasonable mind may not conclude that the significant derivative losses are reflective of only Suzano's costs but, rather, that these costs are associated with Suzano's expanded operations, including Fibria's operations.  As such, Commerce's updated proposed methodology is necessary, reasonable, and consistent with Commerce's finding that these particular expenses relate to both Suzano and Fibria's operations, and is consistent with Commerce's precedent.

- The two companies were actually a consolidated entity during the last two months of the POR (January and February 2019).  Commerce's proposed treatment of the Fibria-related expenses, therefore, rightly treats Fibria and Suzano as a single entity for purposes of computing the interest expense.

---

[65] *Id.* (citing *Phosphor Copper from the Republic of Korea:  Final Results of Antidumping Duty Administrative Review; 2016-2018*, 84 FR 69720 (December 19, 2019), and accompanying IDM at Comment 4; and *Steel Wire Rod from Spain* IDM at Comment 2 (citing *Floral Trade Council*)).

*Petitioner's Comments*[66]

- Commerce should revert to the financial expense ratio used in the *Final Results*.[67]  While Commerce correctly found that Suzano's derivative losses are not extraordinary, Commerce's recalculation of Suzano's financial expense rate based on the combination of Suzano and Fibria's financial expenses and cost of sales is unfounded.

- Commerce's combination methodology is inconsistent with the mandate of section 773(f)(1)(A) of the Act, which requires a respondent to rely on its normal books and records, unless those records are not in accordance with GAAP or do not reasonably reflect the costs associated with production and sales of the subject merchandise. Commerce made no such findings in the Draft Second Remand Results, nor is there any record evidence to support such findings.  Therefore, Commerce should rely on Suzano's normal accounting treatment for the derivative losses and rely only on Suzano's cost of sales in determining Suzano's financial expense rate.

- Fibria is not the respondent in this case, and Fibria was not involved in the production of the subject merchandise during the relevant 2018 fiscal year.  No finding was made that Suzano and Fibria should be "collapsed" pursuant to 19 CFR. 351.401(f) and treated as a single producer for purposes of the dumping calculations.  As such, there is no basis to allocate Suzano's 2018 derivative losses to Fibria's cost of sales when, at the time, Fibria was an entirely separate company.

- Commerce's combination methodology also contradicts the requirement of section 773(f)(1)(A) of the Act that costs be calculated on the records of the exporter or producer

---

[66] *See* Petitioner's Comments.
[67] *See Final Results* IDM at Comment 1.

15

of the merchandise.  Combining the production experience of Suzano and Fibria contravenes that requirement.

- Suzano's contends that its reported combined financial expense calculation relied on by Commerce for the Draft Second Remand Results is "somewhat akin to utilizing the highest level of consolidation" financial statement.  However, Commerce has expressly denied respondents' attempts to provide self-consolidated or combined financial expense ratio calculations that are not based on existing audited consolidated financial statements.[68]  Here, Commerce has failed to explain why such a departure from its practice is warranted.

- The results of Commerce's combination methodology are distortive because they do not eliminate intercompany transactions.  Any pulp purchases or other transactions between Suzano and Fibria would be included in Suzano's cost of sales as well as Fibria's cost of sales, thereby double counting such transactions and overstating the denominator of the combined financial expense rate.

- Commerce's combined methodology is procedurally improper, both because it is beyond the scope of this litigation in general and beyond the scope of the Court's *Remand Order II* in particular.  In the *Final Results*, Commerce denied Suzano's request to recalculate financial expenses using the combined results of Suzano and Fibria.  On appeal, Suzano did not challenge that aspect of the *Final Results*.  Its Rule 56.2 brief, Suzano argued that the derivative losses should be excluded in their entirety, either because they were

---

[68] *See* Petitioner's Comments at 3 (citing *Prestressed Concrete Steel Wire Strand from Tunisia:  Final Affirmative Determination of Sales at Less Than Fair Value* 86 FR 18508 (April 9, 2021) (*Wire Strand from Tunisia*), and accompanying IDM at Comment 4; and *Notice of Final Determination of Sales at Less Than Fair Value:  Narrow Woven Ribbons with Woven Selvedge from Taiwan*, 75 FR 41804 (July 19, 2010) (*Ribbons from Taiwan*), and accompanying IDM at Comment 17.

"investment-related" or "extraordinary."[69]  Suzano did not dispute Commerce's decision to exclude Fibria's financial statements from the financial expense calculations.  The argument, therefore, has been waived.[70]  Consequently, the issue is beyond the scope of this litigation, and Commerce lacks the authority to reopen it on remand.[71]

- Moreover, Commerce's combined financial expense methodology is beyond the scope of the Court's *Remand Order II*, which was limited to reconsideration of the narrow issue of whether the derivative losses were "extraordinary" for purposes of the COP analysis. The Court did not instruct Commerce to consider whether financial expenses should be based on a "combined" Suzano/Fibria entity.

- If Commerce explicitly rejects all of the above-mentioned objections, and if (after briefing on appeal) such rejections are affirmed by the Court, a precedent would be set for respondents to shift some portion of their costs to other entities.  Respondents could, citing this case, argue that costs recognized in their own audited financial statements should be diluted or excluded from COP altogether because they somehow relate to other companies.

- Commerce's proposed recalculation unnecessarily increases the number and complexity of contested issues in this case, and can only increase the chance of yet another remand from the Court that further protracts this litigation.

---

[69] *See* Plaintiff's Memorandum of Points and Authorities In Support Of Rule 56.2 Motion For Judgment On The Agency Record (July 16, 2021) (ECF No. 23).
[70] *See* Petitioner's Comments at 5 (citing *Canadian Solar Inc. v. United States*, 537 F. Supp. 3d 1380, 1391 (CIT 2021) ("arguments not raised in an opening brief are waived").
[71] *Id.*

**Commerce's Position:**  We continue to find that Suzano's derivative losses are not extraordinary and that it is reasonable to include the derivative losses in the calculation of Suzano's financial expense rate.  However, because the Court held that Commerce's original conclusion was not supported by "such relevant evidence as a reasonable mind might accept as adequate,"[72] we have reconsidered the calculation of Suzano's financial expense rate, and we are now revising it to include Fibria's financial expenses and cost of sales.

Suzano asserts that the derivative losses are investment-related expenses.[73]  However, the Court has already held that the derivative losses in question are not investment related.[74]  Suzano also asserts that the derivative losses are extraordinary expenses because the nature and size of the expenses and the impact the acquisition of Fibria had on Suzano's operations.[75]  We disagree.  As discussed in the Draft Second Remand Results, Commerce's definition of an extraordinary event is based on U.S. GAAP and, to be classified as extraordinary, an event must be unusual in nature and infrequent in occurrence.[76]  An event is unusual in nature if it possesses a high degree of abnormality and is of a type unrelated to, or only incidentally related to, the ordinary and typical activities of the enterprise.[77]

Here, the record shows that, while Suzano may not have previously merged with a company, Suzano's acquisition of a company to expand its operations is not unusual in nature or infrequent.  While the size of the companies and the financing of these acquisitions may differ, the record evidence supports Commerce's conclusion that Suzano's expansion of its operations through the acquisition of other companies was not unusual, infrequent, highly abnormal, or

---

[72] *See Remand Order II* at 15.
[73] *See* Suzano's Comments at 5.
[74] *See Remand Order I* at 6-8.
[75] *See* Suzano's Comments at 5.
[76] *See* Draft Second Remand Results at 7-8 (citing *Floral Trade Council*, 16 CIT at 1016).
[77] *Id*. (citing *Hornos Electricos*, 285 F. Supp. 2d 1364-66).

incidentally related to Suzano's operations.  Suzano's consolidated financial statements show that the company acquired Papel Amazônia, a tissue producer, in 2018, to expand its tissue operations.[78]  The record further reflects that Suzano acquired PCH Mucuri, the owner of a small hydroelectric plant, in 2018 and that Suzano uses electricity in the production of uncoated paper.[79]  These examples, which were captured in the same POR as the derivative losses from the Fibria acquisition, show that expanding normal operations through acquisition of relevant companies for paper production is not an unusual or infrequent event for Suzano.  Suzano claims that the impact of the Fibria merger on the company's operations, when compared with the smaller acquisitions, renders the derivative losses extraordinary.[80]  However, this contradicts Suzano's statement placed on the record at the very beginning of the administrative proceeding that "in all other aspects, corporate policy and operations have remained unchanged" after Suzano's acquisition of Fibria[81] – just as they remained unchanged after the acquisition of the smaller companies.

While Suzano's derivative losses are significant, the definition of an extraordinary expense is not based on size of the expense.[82]  If Commerce were to establish a threshold for the classification of an expense as extraordinary based primarily on size, such a threshold would be difficult to administer on a fair and consistent basis and may allow for manipulation in its interpretation.  The difficulty in administering such a practice would be finding a consistent basis against which to measure the size of an expense among different respondents within a proceeding or among different respondents in different proceedings.  Moreover, it would be

---

[78] *See* Suzano's Initial Section A Questionnaire Response at A-1 and Exhibit A-17 (p. 30 of 110, n. 1.1.b.ii).
[79] *Id*. at Exhibit A-17 (p. 30 of 110, n. 1.1.b.iii); and Suzano's Initial Section D Questionnaire Response at D-6.
[80] *See* Suzano's Comments at 6-7.
[81] *See* Suzano's Initial Section A Questionnaire Response at A-1 (n. 1) (describing how, after the Fibria acquisition, Suzano changed its name to Suzano S.A., but "in all other aspects, corporate policy and operations have remained unchanged").
[82] *See* Draft Second Remand Results at 7-8 (citing *Floral Trade Council*, 16 CIT at 1016).

difficult to determine how significant an expense in any particular industry would have to be for a reasonable mind to deem it extraordinary. Therefore, in accordance with Commerce's existing practice, we find that the evaluation of the nature of the expense rather than size of the expense to be a more reasonable, fair, and consistent approach in determining whether an expense is extraordinary.

While we continue to find that Suzano's derivative losses are not extraordinary, *given the facts at issue*, a reasonable mind may not conclude that the significant derivative losses are reflective of only Suzano's costs but, rather, that these costs are associated with Suzano's expanded operations, including Fibria's operations. To acquire Fibria, Suzano took on a significant amount of debt for the purposes of expanding its operations. Suzano's management of the cash that resulted from that acquired debt resulted in the hedging losses at issue in this case. Due to the timing of the acquisition, Fibria's cost of sales (which should have been burdened with the hedging loss along with Suzano's cost of sales as part of its expanded operations) was not included in the denominator of Suzano's financial expenses. Accordingly, *for the purposes of this case*, we continue to rely on the calculation of Suzano's financial expenses to reflect the combination of Suzano and Fibria's financial expenses and cost of sales as reported by Suzano as we did in the Draft Second Remand Results.[83]

While we acknowledge that section 773(f)(1)(A) of the Act requires Commerce to rely on the books and records of the producer or exporter of the merchandise under consideration, the Act also mandates that those records be compliant with the respondent's home country GAAP and reasonably reflect the COP. Here, *given the facts at issue*, Suzano's normal books and

---

[83] *See* Draft Second Remand Results at 11.

records are not reasonable.  As such, for purposes of this case, we have relied on both Suzano and Fibria's financial expenses and cost of sales to calculate Suzano's financial expense rate.

The petitioner asserts that Commerce has failed to explain why a departure from its practice of denying a respondent's attempt at self-consolidated or combined financial expenses is warranted here.[84]  In *Ribbons from Taiwan* and *Wire Strand from Tunisia*, Commerce stated its practice is to rely on the audited financial statements at the highest level of consolidation at which the financial statements are normally prepared.[85]  Commerce also stated that, where the respondent attempts to use "constructed" consolidated financial expenses for the interest expense ratio calculation, Commerce has expressly denied respondents' attempts to provide self-consolidated or combined financial expense ratio calculations that are not based on existing audited consolidated financial statements.[86]  However, the facts in this case differ from the facts in both *Ribbons from Taiwan* and *Wire Strand from Tunisia*.

In *Ribbons from Taiwan*, Commerce determined that it was reasonable to rely on a producer's company-specific financial statements where a company did not prepare in the ordinary course of business a consolidated financial statement that included all entities that Commerce had "collapsed" with that producer.[87]  Here, Suzano and Fibria were not collapsed entities.[88]  As a result, and consistent with *Ribbons from Taiwan*, Commerce relied on the audited consolidated financial statements of Suzano, the producer, to calculate Suzano's financial expenses.[89]  Further, unlike in *Ribbons from Taiwan*, here the Court has questioned whether the derivative expenses associated with the Fibria acquisition reasonably reflect

---

[84] *See* Petitioner's Comments at 4.
[85] *See Ribbons from Taiwan* IDM at Comment 17; and *Wire Strand from Tunisia* IDM at Comment 4.
[86] *Id.*
[87] *See Ribbons from Taiwan* IDM at Comment 17.
[88] *See generally Final Results* IDM.
[89] *Id.* at Comment 1.

Suzano's actual costs,[90] and, as a result, we have modified our calculation of these expenses based on the facts which are unique to this case.

In *Wire Strand from Tunisia*, Commerce rejected a request to combine the financial expenses of the respondent and the respondent's parent company, because Commerce found that the expenses reflected on the financial statements at the highest level of consolidation (*i.e.*, the respondent's financial statements) were not distortive.[91]  In contrast, here, the Court has questioned whether the financial expenses reflected on Suzano's consolidated financial statements are distortive for purposes of calculating Suzano's costs, and we believe that our recalculation adequately addresses that concern.[92]

Section 773(f)(1)(A) of the Act requires Commerce to calculate costs using the records of the exporter or producer if they are kept in accordance with the home country's GAAP "*and reasonably reflect the costs associated* with the production and sale of the merchandise."[93] Therefore, to more reasonably reflect Suzano's actual costs, for purposes of these final results of redetermination and based on the unique facts of this case, we have revised the financial expense ratio to use both Suzano and Fibria's financial expenses.

Finally, we disagree with the petitioner that our revised financial expense calculation in the Draft Second Remand Results is procedurally improper and not within the scope of the litigation, in general, or of the Court's *Remand Order II*, in particular.[94]  With respect to the scope of the litigation in general, all issues that are not included in the initial complaint are considered final and are "essentially immune to attack," even from Commerce itself.[95]  The

---

[90] *See Remand Order II* at 8-9.
[91] *See Wire Strand from Tunisia* IDM at Comment 4.
[92] *See Remand Order II* at 8-9; *see also Wire Strand from Tunisia* IDM at Comment 4.
[93] *See section* 773(f)(1)(A) of the Act (emphasis added).
[94] *See* Petitioner's Comments at 5-6.
[95] *See Zhaoqing Tifo New Fibre Co. v. United States*, 256 F. Supp. 3d 1314, 1326-27 (CIT 2017) (*Zhaoqing Tifo*).

complaint in this case explicitly includes reference not only to the treatment of Suzano's derivative expenses more broadly, but also explicitly references "Commerce's refusal to alternatively calculate Suzano's financial expense ratio by combining the financial expenses of Suzano and Fibria."[96]  Therefore, the issue is not beyond the scope of this litigation because it was included in the opening complaint which defines that scope.

The scope of the *Remand Order II* also allows for Commerce to consider the potential of combining the financial expenses of Suzano and Fibria.  While we do not disagree that the Court did not specifically direct Commerce to revise the cost calculations in the manner that it chose in this remand, the Court directed that Commerce provide "further explanation and, if appropriate, reconsideration of its cost analysis."[97]  This is an inherently fact-intensive inquiry which includes not only the question of whether certain costs are extraordinary, the issue at the heart of this remand, but which also requires an analysis of the entire COP calculation used in the *Final Results*.  Commerce has "the broad discretion to fully consider the issues remanded" rather than a narrowly-defined focus on one question.[98]

The petitioner cites *Zhaoqing Tifo* as an example of a case wherein Commerce exceeded the scope of the remand order.[99]  However, this case is fundamentally different.  In *Zhaoqing Tifo*, the Court held that Commerce not only exceeded the scope of the remand order, but also exceeded the scope of the litigation in general – something that is not present in this case.[100]  Here, the question of how to treat Suzano's costs with respect to the Fibria acquisition is at the very heart of this remand.  The Court summarized its conclusion to remand this issue to

---

[96] *See* Complaint, *Suzano S.A. v. United States*, CIT No. 21-69, ECF No. 9 (March 2, 2021).
[97] *See Remand Order II* at 16.
[98] *See Carpenter Technology Corp. v. United States*, 519 F. Supp. 3d 1340, 1346 (CIT 2021) (internal citations omitted).
[99] *See* Petitioner's Comments at 5-6 (citing *Zhaoqing Tifo*, 256 F. Supp. 3d at 1336-37 (CIT 2017)).
[100] *See Zhaoqing Tifo*, 256 F. Supp. 3d at 1336-37.

Commerce by stating that "Commerce has failed to provide adequate explanation as to whether its conclusions on the derivative losses are based on a method that reasonably reflects and accurately captures all of the actual costs."[101]  Further, the Court also does not expressly prohibit Commerce from considering different ways that it might accomplish the goal of developing "a method that reasonably reflects and accurately captures all of the actual costs."[102]  If the Court had directed such a limited analysis, then Commerce would have been prevented from adequately considering and analyzing the specific issues remanded, and would not have been able to revise its determination to achieve the most reasonable and equitable result.[103]

## V.    FINAL RESULTS OF REDETERMINATION

Pursuant to the Court's *Remand Order II*, and in consideration of the record evidence, Commerce has provided additional explanation and consideration regarding its decision to find it reasonable to include the derivative losses in Suzano's COP.  As a result, Commerce has revised Suzano's financial expense rate to include Fibria's financial expenses and cost of sales.  For the reasons explained above, we have made changes to the estimated weighted-average dumping margin calculated in the *Final Results*, as follows:

---

[101] *See Remand Order II* at 8-9.

[102] *Id.*

[103] *See, e.g.*, *NTN Bearing Corp. of Am. v. United States*, 25 CIT 118, 124 (2001), *aff'd* 295 F.3d 1263 (Fed. Cir. 2002) (explaining that it is not necessary for the Court to direct Commerce to consider certain information on the record, and that, because the Court did not bar Commerce from considering certain information and because the issue was raised in plaintiff's complaint, Commerce did not exceed the scope of the remand order by considering such information on remand); *see also American Silicon Technologies v. United States*, 334 F.3d 1033, 1038-39 (Fed. Cir. 2003) (holding that remands from the trial court cannot be read in such a narrow way that would "prevent Commerce from undertaking a fully balanced examination that might have produced more accurate results").

| Exporter | *Final Results* Weighted-Average Dumping Margin (percent) | Final Results of Redetermination Weighted-Average Dumping Margin (percent) |
|---|---|---|
| Suzano S.A. | 32.31 | 8.63 |

7/19/2023



X _____

Signed by: LISA WANG

Lisa W. Wang
Assistant Secretary
  for Enforcement and Compliance